## James C. Churchill & al. v. Asa Bailey.

A partner who sells personal property of the partnership in his own name, on receiving a release from the purchaser to himself, is a competent witness for such purchaser on a trial where title to the property is in question.

Parol evidence is admissible to shew, that such release was actually made and delivered on a day subsequent to its date.

Also, to shew that the date of a receipted bill of sale was erroneous, and to shew the time when it was made and delivered.

G. delivered his horse to P. with permission to exchange it for another, provided G. should approve the bargain. P. made an exchange, paying difference money himself, and taking the second horse into his possession, when it was attached by B. a deputy sheriff, who left it in the possession of P. taking a receipter for it procured by P. The horse was afterwards delivered by P. to G. who was then ignorant of the attachment, and who approved the exchange and received the second horse as his own. *Held*, that the officer making the attachment could not hold the horse against G.

This was an action of replevin for a horse, alleged to be the property of the plaintiff. The general issue was pleaded with a brief statement, that the horse was the property of one *Parker*, and that the defendant, as a deputy sheriff, attached it as *Parker's* property. On the trial before *Emery J.* the case was :

That on the 4th of *June*, 1833, *Gould & Stanley*, partners in business, were the owners of a horse, and on that day *Gould*, having authority from *Stanley* to dispose of the partnership effects, made a contract with one *Parker*, of which the following is a copy :

" Whereas *William Parker* has this day received of me one light red or sorrel horse, for which he has given me his receipt, which horse he is to return to me on demand, — and whereas I have agreed to sell him said horse on the following terms, viz :— That the said *William Parker* shall within thirty days from the date hereof pay to me thirty-five dollars, and fifty dollars within three months from this date. Now, if the said *Parker* shall

well, truly, and promptly pay the said sums of thirty-five and fifty dollars at the times aforesaid, I promise to execute and deliver to him a bill of sale of said horse, but it is expressly understood that said horse is to be and shall remain my property until the said payment shall be fully made.  *Jesse Gould.*

" *Portland, June* 4th, 1833.  Attest: *R. A. L. Codman.*"

At the same time the horse was delivered to *Parker*, who gave his written promise to return it on demand.  On *July* 12, *Parker* paid *Gould* $35,00; and afterwards, at *Parker's* solicitation, *Gould* gave him permission to exchange this horse for some other, provided that the horse to be received in exchange should be brought to him, and he should approve the bargain.  On the first of *September, Parker* made an exchange of this horse for another with one *Merrill*, giving his note for $10,00, as difference money, but giving no information, that the horse was not his own. On the tenth of *September*, the defendant, as a deputy sheriff, attached this last horse, as the property of *Parker*, who procured one *Grant* to give a receipt to the officer therefor, and the horse was left in *Parker's* possession.  On the 23d of *September, Parker* took the last horse to *Gould*, who after examination and trial, assented to the exchange, and delivered the horse back to *Parker* to keep on the same terms, as the first, dating the written promise to return the horse on the 24th of *August*, the time on which they supposed the leave to exchange had been given.  On the fourth of *November, Parker* took the horse to *Gould*, and delivered it back to him, saying that he wished to give it up, as he could not pay the balance due.  On the same day *Gould* sold the horse to the plaintiffs, had the value indorsed on a note they held against *Gould & Stanley*, and put it in the plaintiffs' stable. At this time *Gould* was ignorant that the horse had been attached. On the day following *Grant*, the receipter, found the horse in the stable of the plaintiffs, took it out without their knowledge, and delivered it to the defendant, and thereupon, on his refusal to give it up, the plaintiffs brought this action.

On the trial, *Gould* was called as a witness by the plaintiffs. He was objected to by the defendant, and produced a release from the plaintiffs to him discharging and releasing all claim and

demand against him, growing out of or arising from the sale of this horse. The release was dated one year prior to the time when it was produced in the Court of Common Pleas, being before the exchange of horses took place. The objection was still insisted on, because it did not release the claim which *Stanley*, his partner, had, and because parol evidence was inadmissible to shew any mistake in the date. The Judge overruled the objection.

To shew the sale from *Gould* to the plaintiffs, they produced a paper, of which a copy follows.

" *Churchill & Carter* bought of *Jesse Gould*, 1833, *Oct.* 4, one sorrel horse, 7 years old,                              $80,00

" Received payment by indorsed on my note. *Jesse Gould.*"

Parol evidence was offered to prove that the sale was actually made on the 4th of *Nov.*; that the paper was written on that day, and that the month of *October* was inserted by mistake. This was objected to on the part of the defendants, and the objection overruled by the Judge. The subject of variance in dates, and the considerations indicating fraud or fairness in the whole transaction, were commented upon by the counsel on each side; and the counsel of the defendant requested the Judge to instruct the jury, " that if they were satisfied, that *Gould* intended to give up his claim upon the first horse after he had received the thirty-five dollars and given his consent to the exchange and afterwards took the receipt of *August* 24, to hold the horse as his own without agreeing to pay *Parker* anything or giving up the notes for the first horse, the transaction would be void, as to *bona fide* creditors by the statute of frauds."

The report shews, that the Judge instructed the jury as follows :

" That if they were upon the evidence satisfied, that the original arrangement of the 4th of *June*, 1833, between *Gould* and *Parker*, was a fair and honest one, *Gould* was competent to sell any of the property of the firm of *Gould & Stanley* on such terms and conditions, as to him might seem proper; that from the precautions taken and from the evidence as to *Parker's* situation, they would judge whether at the time *Parker* made the contract about the horse, and *Mr. Codman* wrote the papers, there was perfect confidence in *Parker's* ability to pay, and

whether or not it was intended, that the horse should remain *Gould's* property till the whole sum was paid; that if it was so intended, that *Parker* had no interest in the horse, but upon those terms; that if they believed *Gould*, the firm of *Gould & Stanley*, were then in good credit, and did not fail until about a month afterwards; that if they believed that *Parker* first applied to *Gould* for liberty to exchange that horse, and it was granted only on condition of *Gould's* approval after seeing and trying him, and that to be on the same terms and conditions, and restrictions, as in regard to the first horse, *Parker* would gain no property in the horse obtained on the exchange by paying or giving a note for ten dollars, only having paid thirty-five dollars toward the price of the horse; that if rights such as *Gould* had by the original contract could be defeated by such means, an agent to exchange a piece of personal property, by paying a small sum of his own money to boot, would become tenant in common with the original owner without his knowledge or consent; that if the jury were satisfied, that the original intent of *Gould* and *Parker* was not fraudulent, then *Gould* owned equally well the horse given in exchange for the first, and no new delivery was necessary from *Parker* to *Gould*, for by the course pursued *Parker* became *Gould's* agent to effect the exchange for *Gould's* benefit; that if they were satisfied, that *Gould* did take the horse in question and put him into the plaintiffs' stable, and they were informed of it, and the plaintiffs fairly and honestly purchased the horse of *Gould* and paid for it by endorsing the price on the note, about which the jury must judge, the delivery by leaving the horse in the stable was sufficient; and that if an officer on a writ against one individual attach the property of another, and the possession of that property is afterwards peaceably regained by the owner, the officer has no such special property, as will justify him in taking it from the possession of the true owner on the execution issued on the judgment on the writ by virtue of which the attachment was made."

The Judge declined giving the instrucion requested by the counsel of the defendant, and did instruct them, that if on the evidence, they believed that the original contract of *June* 4th, 1833, was fraudulently made, with the design that *Parker* should

by the mode adopted, be entitled to cheat or defraud creditors, then the plaintiffs must fail in their suit; but if the original contract of the 4th of *June* was honest and fair, the statute of frauds had nothing to do with the case.

If these rulings, decisions and instructions were erroneous, the verdict, which was for the plaintiffs, was to be set aside and a new trial granted, otherwise the verdict was to stand.

*R. A. L. Codman* and *R. Belcher*, for the defendant, contended:

1. *Gould* was improperly admitted as a witness. The seller is liable to the purchaser on an implied warranty of title, and is therefore inadmissible as a witness for him. *Hale* v. *Smith,* 6 *Greenl.* 416. Nor is this interest divested by reason of the paper produced as a release, because it is dated before the acts occasioning the interest had taken place, and its character could not be altered by parol evidence. *Stackpole* v. *Arnold,* 11 *Mass. R.* 27. And also because it being partnership property and a partnership transaction, a release to one could not divest the interest of both, and take away *Stanley's* claim on *Gould.*

2. The parol evidence in relation to the bill of sale from *Gould* to the plaintiffs ought not to have been admitted. *Stackpole* v. *Arnold,* before cited.

3. At the time of the attachment of the second horse by the defendant, *that horse* was not the property of *Gould,* but of *Parker* or *Merrill.* If it belonged to either, this action must fail. A delivery of it to *Gould* was necessary before the horse could vest in him, and none was made until after the rights of others had intervened by the attachment. *Phillips* v. *Hunnewell,* 4 *Greenl.* 376; *Quincy* v. *Tilton,* 5 *Greenl.* 277; *Lanfear* v. *Sumner,* 17 *Mass. R.* 110; *Woodbury* v. *Long,* 8 *Pick.* 543; *Shumway* v. *Rutter,* 7 *Pick.* 56. *Gould* could not own both horses at the same time, and as *Parker* had no permission to make any exchange until after *Gould* had seen the other horse, and approved the trade, the first horse remained his until after the attachment of the other. Until after this time, *Gould* could have taken the first horse from *Merrill,* as his own, and consequently could have acquired no title to the second. *Parsons* v. *Webb,* 8 *Greenl.* 38; *Smith* v. *Dennie,* 6 *Pick.* 262. Nor could any

subsequent ratification by *Gould*, of the acts of Parker in making the exchange, destroy the lien on the horse acquired by the attachment.   *Fettyplace* v. *Dutch*, 13 *Pick*. 388 ; *Woodman* v. *Trafton*, 7 *Greenl*. 178.

4. *Parker*, having paid thirty-five dollars on the note and ten dollars on the exchange towards the second horse, was at least a joint owner with *Gould* to that amount in the second horse, and one tenant in common cannot maintain replevin.   *Hart* v. *Fitzgerald*, 2 *Mass. R.* 509.

5. The instruction requested ought to have been given.   *Hathorn* v. *Stinson*, 1 *Fairf.* 224 ; *Howe* v. *Ward*, 4 *Greenl*. 195 ; *Dearborn* v. *Parks*, 5 *Greenl*. 81.

*Fessenden & Deblois*, for the plaintiffs.

*Gould* was rightly admitted to testify.   The only interest he could have in favor of the plaintiffs arose from his liability to make good to them the damages they might sustain from failure of their title to this horse.   As he sold the horse to them in his own name, the release was as extensive as the obligation, and discharged him from all interest.   The mistake in the date is of no importance, as the release on its face shews distinctly, that the sale of this horse was the ·subject matter of it.   It took effect from its delivery and not from its date.   The parol evidence in relation to the paper taken by *Gould* of the plaintiffs was properly admitted on the same principles.   Besides, this was a mere receipted bill of parcels, always open to explanation by parol evidence.

The instructions of the Judge were correct.   The verdict of the jury has determined that there was no fraud, or unfairness in the transactions ; but it is contended, that by the positive rules of law we are to be deprived of the fruits of our verdict.   By the terms of the agreement the horse was to remain *Gould's* until the notes were fully paid, and it was only delivered into *Parker's* possession for use, on his written promise to return it on demand. This is a much stronger case in our favor, than if the horse had been *Parker's*, and he had mortgaged it to secure the payment of those notes ; and yet that would have been sufficient to give title to *Gould*.   *Ayer* v. *Bartlett*, 6 *Pick*. 71 ; *Holbrook* v. *Baker*, 5 *Greenl*. 309 ; *Rounds* v. *Baxter*, 4 *Greenl*. 454 ; *Ap-*

*pleton* v. *Crowninshield*, 3 *Mass. R.* 443; *Holly* v. *Huggeford*, 8 *Pick.* 73; *Wheeler* v. *Train*, 3 *Pick.* 255; *Lunt* v. *Whitaker*, 1 *Fairf.* 310. The exchange of *Gould's* horse with his assent by *Parker*, vested the second horse in *Gould*. The delivery of this horse to *Parker*, the agent and bailee of *Gould*, was equivalent to a delivery to *Gould* personally. *Macomber* v. *Parker*, 13 *Pick.* 175; *Kittredge* v. *Sumner*, 11 *Pick.* 50. The horse thus became the property of *Gould*, and could not be held on attachment for *Parker's* debts. *Griffin* v. *Derby*, 5 *Greenl.* 476. *Parker's* giving his note for the difference money gave him no interest in the horse, and therefore he could not be a tenant in common with the plaintiffs. *Emerson* v. *Fiske*, 6 *Greenl.* 200. But in this case the horse was afterwards actually delivered to *Gould*, who accepted it for the first, and returned it to *Parker* to keep on the same conditions. This was a ratification of the acts of *Parker* in making the exchange and had relation back to the time it took place. But in this case *Parker* procured a receipter for the horse and retained it in his own possession. This was never any thing more than a mere nominal attachment, and the conduct of the defendant was an abandonment of it, so far as it respected third persons, ignorant of it, as *Gould* was. *Carrington* v. *Smith*, 8 *Pick.* 419.

What the statute of frauds has to do with this case is not readily perceived. The case of *Griffin* v. *Derby*, before cited, is a sufficient answer to all objections from that source.

The action was continued for advisement, and the opinion of the Court afterwards delivered by

WESTON C. J. — After *Gould*, the witness, was released by the plaintiffs, he had no remaining interest in their favor. If a release to *Gould* would not directly dicharge *Stanley*, no claim could be made against the latter, which would subject *Gould* to contribution; for he was released " from all and every claim and demand growing out of, or arising from the sale." There is evidently a mistake in the date of the release, but the subject matter is very clearly described, and the suit to which it refers, and would be sufficient for the protection of the witness. It was competent for the witness to testify, as to the true time when the

sale was made to the plaintiffs, notwithstanding the bill has a different date. Instruments take effect from the time of their delivery, whatever date they may bear. No declarations of *Parker* were received in evidence, but what were part of the *res gesta.*

The jury have negatived all fraud in the transaction under consideration, on the part of *Gould* or of the plaintiffs. It was competent for *Gould* to prescribe his own terms, if done in good faith, which the jury have found, in his bargain with *Parker* in relation to the first horse. That never having been paid for, remained *Gould's* property, until he consented to exchange him for another. This he might do through the agency of *Parker.* And when he approved of the exchange made by his agent, it had relation back to the time when it was made. No creditor of *Parker* was thereby injured. He had at no time, as the law then stood, an attachable interest in either horse. If *Parker*, in the discharge of his agency, agreed to give boot, he would thereby have a claim upon *Gould*, his principal, for indemnity ; but this would draw after it no lien or interest in the horse, received in exchange. With regard to the sum of thirty dollars paid by him to *Gould*, with a view to the purchase of the horse, it was not agreed that he should thereby obtain an interest in common in the horse, in proportion to what he had paid, but it was expressly stipulated, that it should remain the property of *Gould*, until all the payments were fully made.

The attachment of the second horse by the defendant, as the property of *Parker*, at the suit of *Turner*, had no effect upon the rights of *Gould* or of the plaintiffs. *Gould* might lawfully employ *Parker* as his agent, without subjecting the property to be effected by a creditor of the agent. As to him, the interference of such creditor would be a mere nullity. *Gould* got possession of his own property peaceably, and had a perfect right to sell it to the plaintiffs. He was the active partner, in the firm of *Gould & Stanley* ; and had ample authority to dispose of the property. The plaintiffs paid a full and valuable consideration for the horse ; and when it was put into their stable, it became their property, and was in their actual possession.

We perceive no error in the proceedings of the Judge in receiving testimony, or in withholding or giving instructions to the jury.                                    *Judgment on the verdict.*