# JOHN RENEHAN AND ANNIE K. RENEHAN *vs.* JOSEPH McAVOY AND EUGENIA McAVOY ET AL.

*Deeds: delivery and acceptance; delivery to third parties; deeds to operate at grantor's death; when not effective.*

Delivery and acceptance is essential to the validity of any deed; but what constitutes a sufficient delivery to make a deed operative and effective so as to vest title in the grantee depends largely upon the facts of each particular case. p. 359

In general, the grantee must part with all dominion and control over the deed, at the time of its delivery to a third person, in order to make such act a sufficient delivery so as to divest the title from him, and the delivery to the third person must be for the use and benefit of the grantee. p. 359

Where the person in whose custody a deed is placed by the grantor, to be put upon record after his decease, is the agent of the grantor, upon the death of the latter the agency is revoked and can not be executed. p. 365

Such a delivery is not valid so as to vest title in the grantee.
p. 360

A deed seeking to dispose of real and personal property, as a testamentary paper, but not executed as the law requires, can not operate as a will. p. 366

*Decided November 21st, 1911.*

Appeal from the Circuit Court of Howard County (FORSYTHE, JR., J.).

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER and STOCKBRIDGE, JJ.

*E. Allan Sauerwein* and *Joseph L. Donovan,* for the appellants.

*John G. Rogers,* for the appellees.

BRISCOE, J., delivered the opinion of the Court.

The controversy in this case arises over the validity of a certain paper writing, purporting to be a deed, dated the 10th day of March, 1902, and executed by Hugh McAvoy, late of Howard county, Maryland, in his lifetime and delivered to the Clerk of the Circuit Court for Howard County for record, after his death, by the Register of Wills of that county, in whose custody it had been left by the grantor, to be kept until his death, and then to be placed upon record.

The deed as set out in the record is as follows:

"This deed made this tenth day of March, 1902, by me, Hugh McAvoy, of Howard county, Maryland, witnesseth, that in consideration of five dollars and other good considerations me thereunto moving, I, the said Hugh McAvoy, do grant unto Joseph McAvoy and Elizabeth McAvoy, during their respective lives and no longer, subject, however, to my life estate therein, all that farm situate, lying and being in Howard county, and described as follows; that is to say: the farm upon which I now reside, situated in the Third Election District of Howard county, which my father, the late Francis McAvoy, devised to me, and all the additions which I have made thereto by purchase or otherwise, and I charge said farm with ten dollars for masses to be said for the repose of my soul and those of my family; and after my death and the deaths of both my brother, Joseph McAvoy, and my sister, Elizabeth McAvoy, and the charge aforesaid shall have been paid, I give and grant my said farm and all the additions thereto as aforesaid to my nephew, Allie McAvoy Renehan, for and during his natural life, and after his death to the brothers and sisters of the said Allie McAvoy Renehan equally, share and share alike; but if any or all of said Allie McAvoy Renehan's brothers and sisters shall have departed this life during the lifetime of said Allie McAvoy Renehan, then I give and grant my said farm aforesaid to the

descendants or descendant then living of said departed brother or sister *per stirpes* and not *per capita;* but should the said Allie McAvoy Renehan have children or the descendant or descendants of any deceased child or children living at his, said Allie's, death, then I give to said child or children or the descendants of any deceased child or children living at his death the farm aforesaid *per stirpes* and not *per capita.*

And I give, bargain and sell all of my personal property owned by me at the time of my death to the parties aforesaid upon the same terms and conditions as I have hereby given my real estate.

And I do further charge my real estate given as aforesaid with the further sum of four hundred dollars to be paid by Allie McA. Renehan to my niece, Annie Renehan, wife of my nephew, William Renehan, at the death of the last of said life tenants, Joseph and Elizabeth McAvoy.

Witness my hand and seal.

Witness:                    HUGH McAVOY.   (Seal)

JOHN G. ROGERS."

The deed, it will appear, was executed and duly acknowledged by the grantor on the 10th day of March, 1902, before Howard D. Dunkel, a justice of the peace of the State in and for Howard county, and was recorded among the Land Records of that county on the 2nd day of January, 1904, after the death of Mr. McAvoy.

It is admitted that at the date of the execution of the deed, the grantor was capable of making a valid deed or contract; that he held absolute title to the property; that no rights of creditors or other persons having liens are involved, and the deed was properly executed under the laws of Maryland to pass real estate. But it is earnestly insisted upon the part of the appellants, certain of his heirs at law, that the deed is void because it was never delivered, so as to perfect the instrument as a valid deed, and the grantees took no title to the property mentioned therein.

The Circuit Court of Howard County upon hearing of the case, upon bill, answer and proof, held the deed to be a valid

instrument to convey real estate, and dismissed the plaintiffs' bill for a decree to vacate and annul the deed and for a sale of the property for the purposes of partition among the heirs at law of the grantor. And it is from this order thus passed that this appeal has been taken.

It is clear, upon all the authorities, that delivery and acceptance is essential to the validity of every deed, and what constitutes a sufficient delivery to transfer and vest the title in the grantee or to make it operative and effectual as a deed depends largely upon the facts and circumstances of each particular case. The general and essential requisites to the validity of a deed under the facts and circumstances as indicated in this case have been settled by numerous and well-considered authorities.

In *Duer* v. *James,* 42 Md. 496, affirmed by this Court in *Hearn* v. *Purnell,* 110 Md. 465, it is said, "to constitute a delivery of a deed the grantor must do some act putting it beyond his power to revoke. There can be no delivery so long as the deed is within his control and subject to his authority. In the language of the Supreme Court in *Younge* v. *Guilbeau,* 3 Wall. 634, the grantor must part with the possession of the deed or the right to retain it."

In *Clark* v. *Creswell,* 112 Md. 342, it was held, there is a consummated delivery when the instrument has passed from the grantor, without right of recall, to the grantee or to some third person for his use. The test of delivery is the relinquishment by the grantor of the custody or the control of the deed. When he has formally executed and acknowledged it and delivered it unconditionally to the grantee or one acting for him, the conveyance is completed and the title has passed.

It is also settled by the great weight of authority in this State and in other jurisdictions, that the grantor must part with all dominion and control over the deed at the time of its delivery to a third person, in order to make such act a sufficient delivery, in order to divest the title, and the delivery to the third person must be for the use and benefit of the grantee. *Carey* v. *Dennis,* 13 Md. 18; *Owens* v. *Miller,* 29

Md. 144; *Leppoc* v. *Union Bank,* 32 Md. 136; *Younge* v. *Guilbeau,* 3 Wall. 262; *Porter* v. *Woodhouse,* 59 Conn. 568; note to *Munro* v. *Bowles* (Ill.), 54 L. R. A. 865.

In the case before us the deed, after its execution by the grantor, was placed in the hands of Judge John G. Rogers of the Howard county bar, with certain directions, as testified to by him. The testimony of Judge Rogers, as contained in the record is as follows: "Mr. Hugh McAvoy came into my office on March 10, 1902, and said that he wanted a paper prepared. I asked him what kind of a paper he wanted prepared, and he said that he wanted to make his property over to Allie. I asked him what provisions he wanted in the paper, and at his direction I prepared that paper, the deed. He signed it and I witnessed it. Then I told him to take it down to Mr. Howard Dunkle's and acknowledge it. He returned with the paper and gave it to me. I then asked him what he wanted done with it, and he said that he wanted me to keep it for him; at his death, to have it put upon record. I asked him why he did not have it put on record now, but he said that he had reasons for not doing so. I did not inquire into those reasons. He handed me the paper and I asked him: 'You have delivered this paper to me to be put on record in case of your death?' and he said, 'Yes.' Then he went away. I took the paper and put it in a pigeonhole, and there it remained something over a year. Afterwards he came into my office and said that he wanted the paper. I asked him what he wanted with it, as he had put it into my hands to be put upon record in case of his death. He said that he did not want to change it, but that it had occurred to him that something might happen to me, and then no one would know where the paper was. He said that he thought he had better take it and deliver it to the Register of Wills for safekeeping. I said that this did not make any difference to me. Then he took it away with him."

It is apparent, we think, according to all the authorities, that the placing of the deed with JUDGE ROGERS, under the facts of the case, was not an effective and valid delivery.

It was delivered to JUDGE ROGERS, as stated by the grantor "to be kept for him, at his death to be put upon record." It was subsequently recalled, surrendered to the grantor, and delivered by the grantor to the Register of Wills for Howard County. The evidence shows beyond all question, that from what the grantor did and said, he simply intended to constitute JUDGE ROGERS as his agent for the custody of the paper, and he cannot therefore be treated in any sense as an agent or depository for the use and benefit of the grantees.

It is established by the overwhelming weight of authority, that it is absolutely indispensable in order to constitute a sufficient delivery that the grantor shall part with control over the deed and shall not retain a right to reclaim it. *Clark* v. *Creswell, supra; Brown* v. *Brown,* 66 Me. 316; *Woodward* v. *Camp,* 22 Conn. 457; *Bale* v. *Foreman,* 37 Oh. St. 132; *Hawes* v. *Hawes,* 117 Ill. 409; *Hammerslough* v. *Cheatham,* 84 Mo. 13; *Prustman* v. *Baker,* 35 Wis. 644; *Bailey* v. *Bailey,* 52 N. C. 44; *Trask* v. *Trask,* 90 Iowa, 318; *Wilson* v. *Wilson,* 158 Ill. 567.

The next inquiry then, is, was the leaving of the deed by the grantor in the custody of Mr. Marlow, the Register of Wills, on the 5th of May, 1903, "for safe-keeping, and at his death to put it or have it put on record," a valid delivery of the deed.

Mr. Marlow, who was called as a witness, on behalf of the plaintiff, testified that he was Register of Wills of Howard County in the year 1903, that he knew Mr. McAvoy, and he gave into his keeping a paper writing, which he said was a deed or will under the following circumstances:

"Q. Did he tell you why he gave it to you, and if so what reason did he give? A. He told me that he wished to leave it with me for safe-keeping, and at his death to put it, or have it put, on record.

9 Q. Did you issue any receipt to him? A. I did.

10 Q. Then you accepted the paper for safe-keeping? A. I did.

11 Q. As whose agent? A. Hugh McAvoy's.

12 Q. And you put the deed in the safe? A. I did.

13 Q. Was the deed sealed up? A. I do not remember whether the deed was sealed up or whether I put it in the envelope and sealed it.

14 Q. Then you don't recall whether you knew the name of the grantee or not? A. I do not.

15 Q. I now show you a paper produced out of the custody of the Register of Wills in response to a summons *duces tecum.* Please state whether or not you can identify it? A. I can.

16 Q. In whose handwriting is that paper? A. Mine.

17 Q. What is that paper? A. It is a receipt which I gave Hugh McAvoy at the time he gave me the deed. It is dated at Ellicott City, Maryland, May 5, 1903, and reads: "Received of Mr. Hugh McAvoy a deed left in this office by himself to be put on record at his death by Register of Wills," and is signed by me: "William H. Marlow, Register of Wills for Howard County."

18 Q. On the back of that receipt are the following words: "Deed left for record with Register of Wills, May 5, 1903."

In whose handwriting are those words? A. My handwriting.

(Note: The paper-writing just shown the witness and read by him, with the notation on the back thereof, is now offered in evidence and marked "Plaintiff's Exhibit Examiner No. 1.").

19 Q. Mr. Marlow, did Mr. Hugh McAvoy call for that paper during his lifetime? A. No, he did not.

20 Q. If he had called for it and surrendered the receipt, would you have given it to him? A. I would.

21 Q. During his lifetime, would you have given up the paper to anyone other than Hugh McAvoy? A. I would not, except upon Mr. McAvoy's order.

22 Q. Would you have surrendered it to the grantee named in the deed, had he produced the receipt during the lifetime of Hugh McAvoy? A. I would not.

23 Q. You did not consider yourself in any wise the agent of the grantee, did you? A. I did not.

24 Q. It was not a part of your duty as Register of Wills to become custodian of deeds, was it? A. I should think not, and I so advised Hugh McAvoy at that timem.

25 Q. Then, as I understand it, you took this deed for safe-keeping simply as an accommodation to Mr. Hugh McAvoy and acted as his agent to hold the same for him and put on record at his death, or would have given it back to him had he so requested you? A. That's correct.

26 Q. Did you make any disposition of this deed during Mr. Hugh McAvoy's lifetime? A. I placed it in the safe and there it remained until his death.

27 Q. Did he ever call for it? A. He did not.

Q. What became of it after death? A. Allie Renehan came in the office, produced the receipt which I had given to Mr. Hugh McAvoy, and which I identified a while ago. I thereupon opened the safe, took out the deed and gave it to Allie Renehan, and told him to take it over to the clerk's office and have it put on record.

Q. You know that Hugh McAvoy was dead at that time? A. Yes.

Q. And he left with you the receipt you had given to Hugh McAvoy, and which you identified? A. Yes.

Q. And when you went out of office as register of wills you left that paper in the office? A. In the (the) safe in the office.

Q. Did Mr. Hugh McAvoy, at the time he brought this deed to you saying anything about not wishing to surrender it until his death; and if so, what did he say? A. He did not say anything about not wishing to surrender the deed, but he did say he did not wish to surrender his rights in the property until his death.

Q. And that is the reason he did not want to put the deed on record? A. Yes, while he was living."

Upon cross-examination he further testified in answer to the question:

"Q. Did you gather from what Mr. Hugh McAvoy told you the occasion of the preparing of this deed and the names of the people involved in it? A. No, sir.

Q. You had no reason to believe that the rights of other persons than Hugh McAvoy were involved in the paper that he delivered to you? A. From the remark of Mr. Hugh McAvoy, I should think there were. I think that he said: 'This is my will.' I am positive of it. He said: 'I do not want this put on record until after my death, as I intend to hold the reins while I live.'

Q. And you kept the paper up to the time of his death, didn't you? A. I did.

Q. And you considered yourself his agent? A. I did it for Mr. McAvoy, and for keeping the paper I charged him a fee of fifty cents, which is allowed by law, for the safe keeping of wills, etc."

There was other testimony upon the part of both the appellants and appellee, but it reflects very little light upon this branch of the controversy, and we need not consider it here.

The same principles of law applicable to the conclusion we reached as to the delivery of the deed to Judge Rogers, must control upon the facts of this case, as to the delivery of the deed to Mr. Marlow.

We think, the evidence shows and the declarations of the grantor at the time of the delivery of the deed can admit of but one construction, and that is, he intended to constitute the custodian of the deed, as his agent and not the agent of the grantees. His statement to the effect, that he left with Mr. Marlow, for safe-keeping, and at his death to put it on record, that "I do not want this put on record until after my death, as I intend to hold the reins while I live, and I do not wish to surrender my rights in the property until my death," is conclusive evidence that the grantor did not intend

to part with control or dominion over the deed, but retained the right to recall and revoke it, at will.

In *Carey* v. *Dennis,* 13 Md. 18, it was held, under such circumstances, if the custodian, in whose custody the papers are placed, was the agent of the deceased, then it is clear, upon both principle and authority, that the agency was revoked upon his death and could not afterwards be executed, and the validity of the transfer was thereby defeated. *Clark* v. *Creswell,* 112 Md. 339; *Munro* v. *Bowles,* 54 L. R. A. 865.

In *Johnson* v. *Farley,* 45 N. H. 505, the Court thus announced the rule, to give effect to a delivery to a third person where the assent of the grantee may be presumed from the beneficial nature of the conveyance, it must be placed beyond the control of the grantor and not put in the hands of a third person merely to be delivered to the grantee; for then such third person is merely the agent of the grantor, who, at any time before actual delivery to the grantee, may recall it; but it must be delivered to such third person as the agent of the grantee and received by him in that capacity, and then, if the law will, from the beneficial nature of the conveyance, presume the assent of the grantee, the delivery is complete and the estate passes at once."

The numerous decisions of this Court bearing upon gifts of Savings Bank deposits to take effect on the death of the donor, and involving questions of a valid delivery are to the same effect. *Jones* v. *Crisp,* 109 Md. 34; *Taylor* v. *Henry,* 48 Md. 557; *Whalen* v. *Milholland,* 89 Md. 207.

The testimony also shows that none of the grantees knew of the existence of this deed in the lifetime of the grantor, or that a deed had been deliverd to any one for them. The possession of the receipt given by the Register of Wills for the custody of the deed was retained by the grantor. The evidence of the witnesses Joseph McAvoy, Wm. A. Renehan, and Aloysius Renehan, as to declarations of the grantor, in regard to this receipt, in the event of his death is entirely too contradictory and insufficient, to establish even a delivery

of the receipt to the grantees or that the grantor surrendered control of it, in his lifetime.

The deed itself is quite significant of the intention of the grantor, in this respect, as it seeks to dispose of both realty and personalty, as a testamentary paper, but not being executed as the law requires, it obviously cannot operate as a will.

We cannot agree with the conclusion reached by the Court below, upon the record before us that there was such a sufficient delivery of the deed in this case, as measures up to the requirements of the law, to constitute this a valid and legal deed so as to operate to pass title to the property, in question, to the grantees, and for the reasons stated, the decree of the Court below, dated the 22nd day of March, 1911, will be reversed.

We have considered the exceptions to the testimony reserved by the appellees, here objected to, but they can in no way affect the decision of the case or the conclusion that we have reached, that this is not a valid deed.

The decree of the Circuit Court for Howard County will be reversed, and the cause remanded, for further proceedings, in accordance with this opinion.

> *Decree reversed, cause remanded, with costs to the appellants.*

BRISCOE, J., delivered the following supplemental opinion of the Court modifying the original opinion as to the question of costs:

When this apppeal was before us, at the April Term, 1911, of this Court, the decree of the Circuit Court for Howard County, dated the 22nd day of March, 1911, was reversed, with costs to the appellants, and the cause was on the 24th day of June, 1911, remanded for further proceedings, in accordance with an opinion filed, in the case.

Since the date of the decree that was remanded, Joseph McAvoy, Joseph Renehan and certain others, appellees in this Court and defendants in the Court below, have filed a petition, asking for a modification of the decree, of the 24th of June, 1911, as regards the imposing of the costs, and upon a further consideration of the proceedings and the petition filed herein, we think, that the decree heretofore passed by us should be modified to the extent of the costs, as heretofore determined.

The bill of complaint was filed in the Court below, for the purpose of vacating and declaring null and void a deed from one Hugh McAvoy to Aloysius Renehan and for a sale of the property and the distribution of the proceeds of sale, among the heirs at law of the grantor.

It appears, that the real defendants and contestants, in the case were Aloysius Renehan and Mary I. Renehan, his wife. All of the other defendants, the petitioners here, filed their answer in the Court below, admitting the matters and facts set forth in the bill of complaint and consenting to the passage of the decree as therein prayed. The decree below was in favor of the defendants, Aloysius and Mary I. Renehan, and the plaintiffs' bill was dismissed. The costs in the Court below was decreed to be paid by the parties, complainants and defendants, except Aloysius Renehan and Mary I. Renehan, his wife. The interest of the appellees in the property, is identical with that of the appellants. The plaintiffs appealed the case and the defendants, other than Aloysius Renehan and wife, were merely nominal defendants, and were not represented in this Court by counsel.

We are, therefore, of opinion, that the appellees, other than Aloysius Renehan and Mary I. Renehan, should not be made to pay the costs of the appeal, to this Court, but that the costs of this appeal should be paid by Aloysius Renehan and Mary I. Renehan, the substantial appellees, and the costs in the Court below, should be paid from the proceeds of the sale of the real estate. The former decree will, there-

fore, be modified to this extent, and the decree will be revised so far as it relates to the payment of costs.

> *Decree reversed as to costs, the costs in this Court to be paid by Aloysius Renehan and Mary I. Renehan, his wife, and the costs in the Court below to be paid out of proceeds of sale of the real estate.*