## LUTZ *v.* PORTER

[No. 114, October Term, 1954.]

*Decided March 25, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS and HAMMOND, JJ.

*Edwin S. Panetti* and *Henry V. Wagner,* for appellant.

*Ellis Peregoff,* for appellee.

HAMMOND, J., delivered the opinion of the Court.

This appeal is from a decree holding the appellant, Vernon C. Lutz, liable as surety on a bond given to guarantee performance of a building contract and referring the matter to an auditor for the ascertainment of damages. The description of the parties in the bond was reversed, the actual principal being called surety, and the appellant and a co-surety, principals, and, although executed by the appellant as an individual, was signed by him as vice-president of the corporate principal. The bill of complaint was filed by Helen B. Porter, the appellee, against the appellant, the McMillen Company, the contractor and principal on the bond, and Edward W. Pugh, its controlling stockholder and the co-surety, to construe the bond so as to give effect

to the agreement and understanding of the parties or, in the alternative, to reform the bond, and to procure damages for failure to faithfully perform the building contract. Demurrers were over-ruled, answers filed and testimony taken. The McMillen Company and Pugh did not appeal, although the decree was against them also.

The appellant, a surveyor and engineer, had done work for Pugh, a builder. Pugh had encountered difficulties and was indebted to appellant, although the two were friends. Appellant, because of a desire to help Pugh, as well as to bring about profits which would enable him to be repaid the monies due him, and in anticipation of becoming an officer of Pugh's newly formed building company, was instrumental in bringing together, through the offices of a lawyer, the appellee who was going to build a house, and Pugh, operating as the McMillen Company. The contract was signed September 18, 1951 but all copies remained in the offices of appellee's lawyer until October 25, 1951, after the bond had been signed, sealed and delivered on that day. The house was never completed by the McMillen Company and there were unpaid bills to suppliers of some seven thousand dollars. The appellee was required to pay these in order to save the property from sale. Demand was made upon appellant to make good on his bond, and after negotiations for the purchase of the house from Mrs. Porter by him had fallen through, the proceedings which have led to this appeal were instituted.

The parties differ sharply as to the facts. The appellant says that he did not intend to be bound individually when he signed the bond, that even if it be held that he so intended, the bond was signed almost a month after the contract had been executed and was effective, so that there was no consideration for the signing of the bond. Further, he says that all payments on the contract, which, according to its terms were to be made at stated intervals, were to be made to him and the McMillen Company jointly, so that the payment of suppliers would be insured, but this was not done and that,

therefore, his liability was terminated. He argues also that the appellee demanded many things which the contract did not require and the McMillen Company acceded to these demands without his consent and that this was a departure from the contract which he guaranteed, so as to release him. Finally, he says that the building contract was breached by Mrs. Porter rather than by the McMillen Company because of the excessive and unreasonable nature of her demands. On the other hand, Mrs. Porter says that the contract was delivered to her attorney to be held until the bond was executed, and only then was to go into effect. She says that Lutz was required to go on the bond because neither Pugh nor his company had any financial responsibility and had been given the contract only because Lutz was back of him. She denies that there was ever any agreement to make the payments through Lutz or that she was unreasonable in her demands or breached the contract.

The chancellor found as a fact that the bond was intended to be and, under its terms, was one wherein the McMillen Company was the principal, and Lutz and Pugh, sureties in their individual capacities, and that Mrs. Porter was entitled to recover damages against all of the defendants. In this we think he was clearly right. The chancellor specifically found that the contract was retained by the lawyer until the bond was executed "and that there would not have been a contract unless Mr. Lutz stood good for it". He found further that the job was not finished and was not done in accordance with the terms and specifications of the contract. In reviewing the action of the chancellor, we are bound by his findings of fact unless we are convinced that he was clearly wrong. We see nothing in the record to lead us to such a conclusion and much that sustains his findings.

This Court has held that if one guarantees the performance of a contract at the time of the making of the contract, the same consideration that supports the contract supports the guarantee. *Klosterman v. United Elec.*

& *Power Co.*, 101 Md. 29; *Roberts v. Woven Wire Mat Co.*, 46 Md. 374, 386. Here the finding of the chancellor as a fact was that the contract was not to be delivered and, so become effective, until the bond was executed. Parol evidence is admissible not to alter or contradict the terms of a written contract but to show that there was not a contract at all or that the writing was not to become one until a certain time or until the happening of certain events. *Williston, Contracts,* Rev. Ed., Sec. 634; *Southern Adv. Co. v. Metropole Co.*, 91 Md. 61; *Messick v. Smith*, 193 Md. 659, 666; *Churchill v. Bailey,* 13 Me. 64. Where the writing which guarantees the contract expressly refers to that contract, parol evidence is admissible to show the identity of time between the effective date of the contract and of the guaranty so as to bring it within the rule of simultaneous execution. *Ordeman v. Lawson*, 49 Md. 135; *Roberts v. Woven Wire Mat Co., supra.* As a background for the rule of law, as to consideration, there stands the fact that Lutz was motivated in arranging the contract and signing the bond, which would permit the contract to go into effect, by the hope of recouping lost fees and gaining future financial reward as a participant in the building operations of the McMillen Company.

The evidence is in conflict as to how the payments were to be made. The chancellor made no specific finding on the point but the necessary implication in his decision is that he did not find appellant's claim in the matter to be sound. First to be observed is that the bond is silent on the point in its own terms. To the extent that the terms of the contract are incorporated in the bond, times of payment are set forth and there is nothing to indicate that payment is to be made other than to the contractor alone. This being so, the effort to show a parol agreement, which varied the terms of the bond and the contract, must fail. *Art, etc. Corp. v. Fidelity Con. Corp.*, 194 Md. 110. Even if the rule were otherwise, we think the record sustains the view that there was no agreement, certainly after the first pay-

ment of fifteen hundred dollars, that payments were to be made to Lutz and the McMillen Company jointly. The testimony of the witnesses for the appellee to this effect is reinforced by the undisputed fact that Lutz did not currently object to the way payments were made and, indeed, for much of the time, was away, either by reason of ill health or on vacation.

We find no substances to the appellant's claim that there were variations in the terms of the plans and specifications or that Mrs. Porter, rather than the McMillen Company, breached the contract. As we have noted, the chancellor's finding of fact is to the contrary. Furthermore, the bond, by its very terms, provided that alterations in the terms of the contract or in the work under it should not release the sureties or either of them, and added this: "Notice to the surety or sureties of any such alterations, extensions or forbearance are hereby waived." We think the chancellor reached the correct conclusion on the facts found and that the decree must be affirmed.

*Decree affirmed, with costs*