## McGRATH *v.* McGRATH

[No. 219, October Term, 1956.]

*Decided June 3, 1957.*

The cause was argued before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and McLAUGHLIN, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Thomas B. Lawrence* for the appellant.

*Jerrold V. Powers,* with whom were *Sasscer, Clagett & Powers* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

This should be the final round between a divorced couple in the running settlement of differences that have arisen since their estrangement. The wife appeals from a decree on a bill of the husband that (a) annulled, and expunged from the land records, an assignment to her from him of his one-half interest as purchaser of real property under a contract, and (b) made him a trustee of that one-half interest for their equal benefit.

The couple were married in 1922. He is a lawyer who had practiced in Prince George's County and the District of Columbia. She acted as his secretary for much of his professional life. They had accumulated several parcels of real estate which they held jointly—the home in Seat Pleasant in which they lived, a farm in upper New York, and an office building in Capitol Heights. In 1946 the husband and another man bought, under contract, with time payments, a parcel of ground known as the "ball park." Each owned a half.

In August of 1949 disagreements arose between husband and wife, and his health deteriorated so that his doctor advised him to give up the practice of law and take a rest cure on the New York farm. The couple agreed to disagree and arranged a division of property. The wife was deeded the home property, and the husband the New York farm, with appropriate releases of dower. Apparently nothing was then said about the ball park property. The husband went to New York and the wife remained in Maryland and took charge of the law office. The deeds were prepared by the wife and sent to the husband in New York; he signed them and returned them to Prince George's County, where they were notarized by one Albert Goldstein, a druggist whose place of business was across the street from the law office. In November, 1949, the husband came back to Maryland to resume the practice of law and a discussion took place as to the office building and the ball park lot. He says title to the building was supposed to have been transferred to him under the agreement of

August, 1949. She says that it was not but that she was willing for him to have it if he assigned to her his half interest in the ball park property. She says further that he agreed to this and that on November 22, 1949, the necessary papers were signed, acknowledged and delivered by him, including an assignment to her outright of the ball park property. The husband told the chancellor that his wife, who was quite competent to do so, always drew deeds and assignments for him and that he then checked them before they were used. He testified that after he had signed the assignment, under seal, but before he had acknowledged or delivered it, he realized that, as drawn, it gave his wife his entire interest rather than a half of his half, as he wished and intended, and for this reason he put it in his desk, until he could give it further thought. Soon after, the couple were reconciled, and lived together as husband and wife until 1954. They restored all their properties, except the ball park lot, to joint ownership. He says that he did not think any more about the assignment until they were about to separate again—this time for good—when his wife told him that the property belonged to her. He then found out that the assignment was witnessed by her sister, purportedly acknowledged before Mr. Goldstein (described by the chancellor as "the rather accommodating notary", and one with "apparent unlimited accommodation in these matters") and recorded among the land records of Prince George's County. The monthly payments due under the contract of sale were made from funds of the husband or from funds in a joint account from the time it was signed until 1954. After the final separation, the wife made the payments. In early 1956 the couple were divorced and shortly after, the bill of the husband to void the purported assignment and have him declared trustee for both of them was filed and heard.

The chancellor found that the assignment, under seal, of the interest of the husband in the contract of sale had neither been delivered by him nor acknowledged by him, and that therefore it was null and void. We concur. An instrument under seal, as this assignment was, must be delivered if it is to have effect, and whether there has been delivery is a ques-

tion for the trier of the facts. 4 *Tiffany, Real Property,* Third Ed., Secs. 1033, 1034; *Restatement, Contracts,* Secs. 95 and 101, 102; *Renehan v. McAvoy,* 116 Md. 356; *Zulver Realty Co. v. Snyder,* 191 Md. 374; 1 *Williston on Contracts,* Rev. Ed., Sec. 210. See also *Lutz v. Porter,* 206 Md. 595, 599-600.

The record discloses evidence fully sufficient to permit the chancellor to have reached the conclusion he did. The wife argues that if the husband had not intended to assign to her his interest in the ball park property, he would have destroyed the paper he had signed, or at least would not have simply forgotten or overlooked it for years. There is some plausibility to her arguments. Yet, unless the record shows him clearly to have been wrong, the chancellor's determination as to what testimony he believes and what he does not must stand. Here the chancellor believed the husband's version of what he intended and what he did, as well as why he did not do what might have been expected. Very strong inferences from writings in evidence support the chancellor. It was shown that on November 22, 1949, when the husband returned from New York, several conveyances were executed. One was a deed of the office building from the husband and wife to her sister, as straw party; another was a deed from the sister to the husband; and the third was a release by the wife of all of her right, title and interest in and to the office building. Each of these was witnessed by Albert Goldstein, the notary who took the acknowledgments, and each of the acknowledgments was dated November 22, 1949. The assignment of the contract of purchase of the ball park from the husband to the wife also was dated November 22, 1949, but it was witnessed by the sister, and the notarial acknowledgment by Mr. Goldstein was dated November 23, 1949. The chancellor found the sister's testimony that she saw the husband sign the assignment to be without weight, in view of the fact that she could remember no other details of what took place on the day in question. We think that the significance attributed by the chancellor to the fact that the date of the acknowledgment on the assignment differed from the date of the other acknowledgments and the fact that the notary witnessed all the signatures but that on the assignment, to have

been fully warranted. In further support of his conclusions was a letter to a Prince George's County official, composed in 1953 in New York by the wife at the direction of the husband, in which she described the property as belonging to him. Not only is this a case plainly suitable for the application of the rule that findings of fact by a chancellor who had the opportunity to evaluate the reliability and credibility of the witnesses and their testimony will not be lightly disturbed but it is one where the findings were substantiated by impartial evidence that although mute was eloquent—the various writings. The conclusion that there had never been a delivery of the assignment was fully justified.

The husband's offer to hold his interest in the ball park property as trustee for himself and his former wife was candid and equitable. The decree further protected the wife by requiring the refunding to her of one-half of payments made by her since 1954 on account of the property. The husband's explanation as to why he had permitted her to do this was that he was both sick and impoverished during the time that she made the payments and that she was receiving certain income sufficient to care for them which made him feel that it was not inequitable for her to do so. We find no error in the decree appealed from.

*Decree affirmed, with costs.*