JOHN DUER, JR., and others, trading as DUER, NORRIS AND COMPANY, and JAMES CORTLAN, JR. *vs.* HENRY JAMES, and others.

*What is essential to the Delivery of a Deed.*

To constitute a delivery of a deed, the grantor must do some act putting it beyond his power to revoke. There can be no delivery so long as the deed is within his control and subject to his authority.

The delivery need not be to the grantee, but may be to a third party authorized to receive it, or even to a stranger for the use of the grantee.

It is not necessary to prove a formal delivery; this may be inferred from the acts of the party without words, or from words without acts, or from both combined.

D. & McD. entered into a written contract with a firm, to build for the latter two houses, in which they stipulated among other things to give security against liens and incumbrances when required. During the progress of the work security was demanded of D., and accordingly a deed was prepared in which D. conveyed all his property real and personal to J. and E. in trust to hold the same until a day named, and then to sell the same, or so much as might be necessary, to pay all claims for labor and materials used in the construction of the houses, the residue, if any, to be paid to the grantor. The deed was signed and acknowledged by D. before a justice of the peace, and left by him with the justice, he saying at the time that J. and E. the trustees therein named, would call and sign it and that would complete the paper. On the next day J. and E. went with D. to the office of the justice, and after reading the instrument refused to have anything to do with it, saying at the same time, that it was altogether different from what D. had represented it to be. After some conversation between them D. agreed to convey the property directly to J. and E. he being indebted to them for materials furnished in the construction of said houses, they agreeing at the same time to waive their liens on the houses for the materials thus furnished. A new deed was then prepared, executed and delivered, and the deed of trust was destroyed. HELD :

1st. That upon these facts there was no such parting with the possession of the deed of trust by the grantor as to deprive him of further control and dominion over it.

2nd. That there was no such delivery of the deed as to make it operate either as a deed of trust, or as an equitable contract.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case was filed by the appellants against the appellees, seeking to have the benefit of a deed of trust which was made and afterwards destroyed under the circumstances set forth in the opinion of this Court. The Court below (PINKNEY, J.,) by the agreement of the parties passed a *pro forma* decree dismissing the bill, and the appeal is taken from this decree.

The cause was argued before BARTOL, C. J., GRASON, ALVEY and ROBINSON, J.

*William A. Fisher* and *William Henry Norris*, for the appellants.

There was in this case a sufficient delivery of the deed to vest the title in James and Eareckson. The acts done by Davis, in executing and *acknowledging* the deed, and then leaving it with the justice to be handed to the grantee, and the directions given for its being recorded, without any condition, amounted to a delivery of it. *Scrugham vs. Wood*, 15 *Wendell*, 545; *Doe vs. Knight*, 5 *Barn. & Cr.*, 671; *Lloyd vs. Bennett*, 8 *Carr. & Payne*, 124; *Kidner vs. Keith*, 109 *E. C. L.*, 42; *Exton vs. Scott*, 6 *Simons*, 31; *Souverbye vs. Arden*, 1 *Johns. Ch.*, 254-5; *Verplanck vs. Sterry*, 12 *Johns.*, 554; *Church vs. Gilman*, 15 *Wendell*, 656; *Dawson vs. Dawson*, *Rice Ch. (S. C.,)* 243.

The estate vested in the grantees from the moment of the delivery of the deed to the justice for them, the deed being complete in fact without affidavit. *Hoopes vs Knell*, 31 *Md.*, 550; *Taw vs. Bury*, 2 *Dyer*, 167 *b*; *Alford &*

*Lea's Case*, (*Croke Eliz.*, 54,) 2 *Leonard*, 110; *Souverbye vs. Arden*, 1 *Johns. Ch.*, 255; *Church vs. Gilman*, 15 *Wendell*, 656; *Doe vs. Knight*, 5 *Barn. & Cress.*, 671; *Reynolds vs. Bank of Va.*, 6 *Grattan*, 174.

The most that can be claimed is that there would be a species of *remittitur* when the grantees declined to accept. But this could only be subject to the rights of the *cestuis que trust* which had become fixed, when the title vested by the delivery. *Read vs. Robinson*, 6 *Watts & Serg.*, 331; *Reynolds vs. Bank, &c.*, 6 *Grattan*, 174; *Field vs. Arrowsmith*, 3 *Humphrey*, (*Tenn.*,) 442; *Dawson vs. Dawson, Rice Eq.* (*S. C.*,) 243; *Brevard vs. Neely*, 2 *Sneed*, 171; *Webb vs. Dean*, 21 *Penn.*, 32.

But in any event the deed operated as an equitable contract to convey the estates therein mentioned, in pursuance of a *covenant* contained in the building contract, and binds the defendants, James and Eareckson, who took with knowledge of all the facts, and in open fraud of the rights of the appellants. *Alexander vs. Ghiselin*, 5 *Gill*, 184, &c.; *Johnston vs. Canby*, 29 *Md.*, 216, &c.; *Moncrieff vs. Goldsborough*, 4 *H. & McH.*, 281; *Burn vs. Carvalho*, 4 *Mylne & Craig*, 690; 1 *Story's Eq.*, secs. 395-7.

If the trustees declined the trust, the execution of it devolved upon the Court of Equity, which will appoint new trustees and administer it. *Read vs. Robinson*, 6 *Watts & Serg.*, 329; *King vs. Donnelly*, 5 *Paige Ch.*, 46; *Reynolds vs. Bank of Va.*, 6 *Grattan*, 174; *Field vs. Arrowsmith*, 3 *Hump.*, (*Tenn.*,) 446; *Dawson vs. Dawson, Rice Eq.* (*S. C.*,) 243.

*John H. B. Latrobe* and *S. Teackle Wallis*, for the appellees.

The deed did not express the intention of the parties. *Johnson vs. Baker*, 4 *Barn. & Ald.*, 440; *Doe dem. Lloyd vs. Bennett*, 34 *Eng. C. L. Rep.*, 324.

There was no delivery of the deed. "Delivery is either actual; *i. e.* by doing something and saying nothing; or

else verbal, *i. e.* by saying something and doing nothing. By one or both of these means it must be made. And although the party to whom it is made take it to himself, or happen to get it into his hands, yet it will do him no good, nor him that made it any hurt, until it be delivered." *Shep. Touch.*, 57, (*marg.*,) *Pek., sec.* 127. "But if a man seal and acknowledge before a mayor, or other officer appointed for that purpose, a writing provided for a statute, or a recognizance, this acknowledgment before such an officer, shall not amount to a delivery of the deed, so as to make it a good obligation, if it happen not to be a good statute or recognizance." *Shep. Touch.*, 58, (*marg.*)

"But if a man throws a writing on a table and says nothing, and the party takes it, this does not amount to a delivery, unless found to be put there *with intent* to be delivered to the party." 1 *Leon.*, 140. "And if a patron draws a presentation in writing, and puts his seal to it, and leaves it in his study, and the party for whom it is, get it without the privity or license of the patron and brings it to the bishop, and is thereupon instituted and inducted, yet it is all void." *Yelv.*, 7 ; *Shep. Touch.*, 58, *note* 28.

Delivery is one of the elements in a valid deed. *Smith on Cont.*, 5 ; 2 *Bl. Com.*, 295 ; *Co. Litt.*, 171 b ; *Clarke vs. Ray*, 1 *H. & J.*, 323 ; *Critchfield vs. Critchfield*, 24 *Penn.*, 102.

In order to determine whether or not a proper delivery exists, *two* things must concur.

*First.* The grantor must *part* with the *control* and possession of the instrument, and this even when placed in the hands of a third person for the grantee's use.

*Second.* There must exist an *express or implied intention* to deliver the deed, when the act constituting such delivery takes place.

As to the first characterstic, see *Baker vs. Haskell*, 47 *N. H.*, 479 ; *Maynard vs. Maynard, et al.*, 10 *Mass.*, 456 ;

*Younge vs. Guilbeau,* 3 *Wall.,* 641; *Demesney vs. Gravlin,* 56 *Ill.,* 93.

As to the *second* essential element of a delivery, see *Fisher, et al. vs. Hall,* 41 *N. Y.,* 421; *Johnson vs. Baker,* 4 *B. & Ald.,* 440; *Leppoc, et al. vs. Natl. Union Bank of Md.,* 32 *Md.,* 136; *Elsey vs. Metcalf,* 1 *Denio,* 323; *Rutledge vs. Montgomery,* 30 *Georgia,* 899; *Carr vs. Hoxie,* 5 *Mason,* 60; *S. C. Moore,* 300; 20 *N. Y.,* 76; *Wheelright vs. Wheelright,* 2 *Mass.,* 447; *Stewart vs. Redditt,* 3 *Md.,* 79.

The instrument to Eareckson and James, left with the magistrate to be approved, and if appoved, executed by them, never passed out of the control of Davis—it was a revocable instrument—he was justified in destroying it, and the subsequent one to James and Eareckson was valid and should be sustained.

ROBINSON, J., delivered the opinion of the Court.

To constitute a delivery of a deed the grantor must do some act putting it beyond his power to revoke. There can be no delivery, so long as the deed is within his control and subject to his authority. In the language of the Supreme Court, in *Younge vs. Guilbeau,* 3 *Wall.,* 634,

"The grantor must part with the possession of the deed or the right to return it."

The delivery need not to be to the grantee, but may be to a third party authorized to receive it, or even to a stranger for the use of the grantee. It is not essential to prove a formal delivery, this may be inferred from the acts of the party without words, or from words without acts, or from both combined.

In this case the testimony entirely fails to prove such a delivery of the paper in question, as to make it operate either as a deed of trust, or as an equitable contract.

It appears, that in April, 1853, Davis and McDonald entered into a written contract with Duer, Norris & Company, to build for them two houses, in which they stipu-

lated among other things, to give security against liens and encumbrances, whenever they should be thereunto required.

During the construction of the houses, security was demanded of Davis, and accordingly on the 14th September, 1854, a deed was prepared in which he conveyed all his property, real and personal, to Henry James and Robert Eareckson, in trust, to hold the same until the first of April, 1855, and from and after that date, to sell the same, or so much as might be necessary to pay all claims for labor and materials done and furnished in the construction of the houses; the residue, if any, to be paid to Davis, the grantor.

The deed was signed and acknowledged by Davis before a justice of the peace, and left by him with the justice, he saying at the time that James and Eareckson, trustees therein named, would call and sign it, and that would complete the paper. On the next day James and Eareckson being informed by Davis of the execution of the paper, went with him to the office of the justice, and after reading the instrument, they refused to have anything to do with it, saying at the time, that it was altogether a different paper from what Davis had represented it to be. After some consultation between them, Davis agreed to convey the property directly to James and Eareckson, he being indebted to them for materials furnished in the construction of the houses under the written contract, they agreeing at the same time to waive their liens on the houses for the materials thus furnished. A new deed was then prepared, executed and delivered, and the deed of trust, of September 14th, 1854, was destroyed.

From this statement, it is clear there was no such parting with the possession of the deed of September 14th, by Davis, the grantor, as to deprive him of further control and dominion over it. On the contrary, when it was left with the justice by Davis, all parties interested in its

execution, considered it as an incomplete paper, the counsel for the appellees being of opinion that the affidavits of James and Eareckson were necessary to its validity. Whether the affidavits were essential to its validity, in no manner affects the question of intention on the part of Davis at the time he left it with the justice. He, beyond all doubt, was under the impression that the concurring act of James and Eareckson, was necessary before it could operate as a binding instrument, for he told the justice they would call and sign it, and that would complete the paper. Before that was done Davis looked upon the paper as incomplete, and as such his power and authority over it remained. Entertaining these views the decree below will be affirmed.

*Decree affirmed.*

(Decided 4th June, 1875.)