BARBARA E. YOUNG *v.* HATTIE MAE COCKMAN

[No. 16, October Term, 1943.]

*Decided November 4, 1943.*

The cause was argued before SLOAN, C. J., DELA-PLAINE, COLLINS, MARBURY, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*Henry Vogt* for the appellant.

*Edward L. Putzel* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Hattie Mae Cockman, widow, of Baltimore, in a suit for discovery, specific performance and injunction against Barbara E. Young, of New York, and McCormick & Company, a body corporate, alleges in her bill

of complaint (1) that she married James A. Cockman in July, 1939, but they became estranged and for a long time lived apart; (2) that in September, 1940, her husband, ill and requiring nursing, promised he would give her property valued at $6,000 if she would take him back in her home; and on February 18, 1941, in fulfillment of that promise, he and Mrs. Young, his daughter by a previous marriage, joint owners of 60 shares of preferred stock of McCormick & Company, assigned the certificate for the shares, valued at $6,000, to himself and complainant, and was advised by his attorney that the certificate should be taken to the corporation for registration, and he stated he was feeling too ill to go there at the time but would do so as soon as he felt able; (3) that complainant nursed and cared for him until June, 1941, when his health was such that he was unable to remain at her home, and he died in North Carolina on April 27, 1942; (4) that she did not take legal action to force him to register the transfer because of his ill health and the assurance of his daughter that she would see that the transfer was registered; and (5) that the certificate has been lost, but the daughter refuses to give her consent to registration of the transfer. The bill prays that defendants disclose the location of the certificate; that the stock be declared the property of complainant and a new certificate be issued in her name; and that defendants be enjoined from making any different transfer and from issuing any certificate for the shares to others.

Mrs. Young filed a demurrer to the entire bill, and from an order overruling her demurrer she brings this appeal. Under the Maryland statute, an appeal is allowed from any final decree, or order in the nature of a final decree, passed by a court of equity. Code, 1939, Article 5, Section 30. When the defendant files a demurrer to the entire bill, he challenges the jurisdiction of the court or denies that the bill states such a case as he can lawfully be required to answer and defend. The purport of such a demurrer is a denial that complainant

has any right to bring defendant into court on the case presented. When the chancellor rules thereon, he finally settles a disputed right of the parties as far as he can possibly do so. If the demurrer is sustained, complainant can appeal since the right to proceed with his case is finally settled against him. If the demurrer is overruled, defendant can appeal since the decision finally determines the right of complainant to proceed with the case stated in the bill, and imposes upon defendants the necessity of making his defense. Very often it is desireable to settle the question conclusively by means of an appeal before the costs of trial are incurred. We reaffirm the rule that an order either sustaining or overruling a demurrer to an entire bill of complaint is not an interlocutory order but an order in the nature of a final decree, from which an appeal lies. *Chappell v. Funk,* 57 Md. 465; *Hyattsville v. Smith,* 105 Md. 318, 66 A. 44; *Darcey v. Bayne,* 105 Md. 365, 66 A. 434; *Peoples v. Ault,* 117 Md. 631, 636, 84 A. 60; *Hendrickson v. Standard Oil Co.,* 126 Md. 577, 583, 95 A. 153; *Harlan v. Lee,* 177 Md. 437, 9 A. 2d 839. This construction of the statute was applied in the opinion, but not in the order denying reargument, in *Applestein v. Royal Realty Corporation,* 181 Md. 171, 28 A. 2d 830.

The basic issue on this appeal is whether the bill of complaint alleges a transfer of title to the stock. In 1872 the Court of Appeals declared that a transfer of shares of stock from an assignor passes his entire interest therein, and the assignee becomes entitled thereto before the assignment is registered on the books of the corporation. *Baltimore City Passenger Ry. Co. v. Sewell,* 35 Md. 238, 252, 6 Am. Rep. 402. Similarly, the Uniform Stock Transfer Act, passed by the Legislature of Maryland in 1910, provides that title to a certificate and the shares represented thereby can be transferred by delivery of the certificate endorsed by the owner of the shares, although the charter or by-laws of the corporation and the certificate itself provide that the stock

shall be transferred only on the books of the corporation or by registrar or transfer agent. Acts of 1910, Chap. 73; Code, 1939, Art. 23, Sec. 55. It is admitted in this case that the certificate was endorsed in the usual and proper manner. It is disputed that there was a delivery. The word "delivery" is defined by the Act as "voluntary transfer of possession from one person to another." Code, Art. 23, Sec. 75. Hence, the decisive question is whether there was a transfer of possession from Cockman and daughter to Cockman and wife. The controversy evidently arose from the fact that the certificate was in the possession of Cockman both before and after the assignment. But it must be kept in mind (1) that the assignment was by joint tenants to other joint tenants; and (2) that the word "person," as used in the Uniform Stock Transfer Act, includes "two or more persons having a joint or common interest." Code, Art. 23, Sec. 75. According to the definition in the Act, the transfer alleged in the bill of complaint was, in effect, from one person to another. The Act is so construed as to effectuate its general purpose to make uniform the law of those States which enact it. Code, Art. 23, Sec. 72; *Jenkins v. Continental Trust Co.*, 150 Md. 416, 133 A. 610.

Possibly Mrs. Cockman could show that, after Mrs. Young has possession of the certificate while endorsing it, she presented it to her father, thereby making a manual tradition. But that would not be absolutely necessary, for manual tradition is not always essential for an effectual delivery. *Buchwald v. Buchwald*, 175 Md. 115, 120, 199 A. 800, 803. Delivery may be constructive, rather than actual, provided that it is accompanied by words showing a donative intent. But, of course, either constructive of actual delivery must completely divest the donor of his property and completely invest the donee with it. *Brooks v. Mitchell*, 163 Md. 1, 161 A. 261; 84 A. L. R. 547; *Schenker v. Moodhe*, 175 Md. 193, 201, 100 A. 727; *Lefrooth v. Prentice*, 202 Cal.

215, 259 P. 947, 951. A conveyance to a husband and wife will ordinarily create a tenancy by entireties, but an intention clearly expressed in the instrument that they shall take as joint tenants or as tenants in common will be effective. *Wolf v. Johnson*, 157 Md. 112, 120, 145 A. 363; *Annapolis Banking & Trust Co. v. Neilson*, 164 Md. 8, 10, 164 A. 157. But whether Cockman and his wife took the certificate as tenants by the entireties or as joint tenants, it cannot be doubted that, even though the certificate may never have come into the wife's hands, yet in the eyes of the law she received constructive possesion of the certificate, assuming that the allegations of the bill are sustained by the evidence. Where cotenants own personalty, which is not easily divisible by weight or measure, the possession of one cotenant is in contemplation of law the possession of the other; and even though one cotenant has been turned out of possession by the other, his possession is nevertheless deemed to be continued in that of the dispossessor. *Israel v. Israel*, 30 Md. 120, 125, 96 Am. Dec. 571; *Susquehannah Transmission Co. v. St. Clair*, 113 Md. 667, 77 A. 1119.

To make an effectual delivery, the donor must not only part with possession of the property, but must also relinquish all present and future dominion and control over it beyond any power on his part to reclaim it. It is obvious that a transfer is not a transfer of possession unless the transferor intends that it shall take effect immediately. If he retains the same control over the property that he had before the transfer was made, there remains a *locus poenitentiae*, in which he may revoke what he has done, and consequently there is no delivery. *Whalen v. Milholland*, 89 Md. 199, 43 A. 45, 44 L. R. A. 208; *In re Bauernschmidt's Estate*, 97 Md. 35, 59, 54 A. 637; *Renehan v. McAvoy*, 116 Md. 356, 81 A. 586, 38 L. R. A., N. S., 941; *Colmary v. Crown Cork & Seal Co.*, 124 Md. 476, 92 A. 1051; *Buchwald v. Buchwald*, 175 Md. 115, 124, 199 A. 800. From the bill of

complaint in this case it appears that when Cockman received the stock certificate properly endorsed, and his attorney instructed him to take it to McCormick & Company for registration, his daughter had completely performed her part of the transfer. There was no implication that the transfer was not to become effective until some future time, but on the contrary the daughter indicated that she intended to surrender her interest in the stock at the time she assigned the certificate to her father and his wife. As no further action was required to make an absolute and irrevocable transfer, we hold that the bill alleges endorsement and delivery sufficient to pass title to the stock.

It has been held by this court that equity will compel a corporation to transfer stock on its books to the assignee of the certificate of stock when it has been transferred to him for a valuable consideration. *Baltimore Retort & Fire Brick Co. v. Mali,* 65 Md. 93, 97, 3 A. 286. It is recognized that a transferee of a stock certificate may pursue one of three remedies against the corporation when it refuses to register his ownership of the stock: (1) enter suit for damages on the ground that the corporation is guilty of conversion for refusing to register the transfer; (2) apply for mandamus to compel registration of the transfer; or (3) file a bill in equity. But it is found in many cases that a proceeding in equity is the surest and most complete remedy. *Real Estate Trust Co. v. Bird,* 90 Md. 229, 243, 44 A. 1048. A court of equity will render complete justice by compelling the delivery of securities which have been withheld from persons entitled to them, for in most cases damages at law are inadequate. *Scarborough v. Scotten,* 69 Md. 137 14 A 704; *Safe Deposit & Trust Co. v. Coyle,* 133 Md. 343, 349, 105 A. 308.

Where an agreement to resume marital relations is made by one who had deserted the other spouse with no justification, the agreement lacks consideration. The mere promise of an undivorced wife to live with her husband and perform such duties as are orinarily imposed

upon her by the marriage contract is only a repetition of the promise made at the time the marriage contract was entered into. The law, seeking to regulate the marriage relation for the welfare of the State, will not allow married persons to discard this relation without justification and renew it for money. *Kesler's Estate*, 143 Pa. 386, 22 A. 982; *Frame v. Frame*, 120 Tex. 61, 36 S. W. 2d 152; 6 *Williston on Contracts*, Rev. Ed., Sec. 1744. However, the law, always favoring the settlement of controversies and especially desiring the reconciliation of husband and wife, does not forbid a husband or wife to forgive the other spouse for wrongs committed and to enter into an agreement for re-establishment of the family. *Adams v. Adams*, 91 N. Y. 381, 43 Am. Rep. 675. An agreement between husband and wife to resume marital relations, where one of the parties has just cause for divorce, is not contrary to public policy, but is a contract which equity is quick to approve. Justice Holmes expressed the opinion that where a husband agrees to surrender his marital interest in his wife's real estate, her promise to refrain from bringing a well-founded suit for divorce is a legal and sufficient consideration. *Polson v. Stewart*, 167 Mass. 211, 45 N. E. 737, 739. We hold that a contract between husband and wife, made when they are separated for just cause, whereby the husband agrees to pay his wife a specified sum if she will resume marital relations, rests upon a valuable consideration and is enforceable. *Rodgers v. Rodgers*, 229 N. Y. 255, 128 N. E. 117, 11 A. L. R. 274; *Bolyard v. Bolyard*, 79 W. Va. 554, 91 S. E. 529; *Mack v. Mack*, 87 Neb, 819, 128 N. W. 527. In the absence of proof, it may be presumed that the wife's grievance was substantial. In addition, it is alleged in this case that the wife agreed to nurse and care for her estranged husband in her own home. The bill of complaint alleges a contract which is valid and enforceable.

A court of equity will not grant relief to a claimant who has slept on his rights for an unreasonable and unexplained length of time, thereby suffering his claim to

become stale and causing prejudice to an adverse party. Such manifest neglect constitutes an implied waiver arising from a knowledge of the conditions and an acquiessence in them: *Hoffa v. Hough,* 181 Md. 472, 30 A. 2d 761, 763. In this case complainant alleges that she refrained from taking legal action against her husband to avoid aggravating his illness. But she filed suit on July 10, 1942, less than three months after his death. Moreover, it does not appear that any prejudice was caused by her delay. Under these circumstances, she is not barred from relief on the ground of laches.

As complainant has the right to invoke the aid of equity, we affirm the order overruling the demurrer to the bill of complaint.

*Order affirmed and case remanded, with costs.*