ALLENDER ET AL. *v.* ALLENDER, INDIVIDUALLY
AND AS ADMINISTRATRIX

[No. 106, October Term, 1951.]

*Decided April 2, 1952.*

*Motion for Modification of Opinion denied May 7, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*John Wood* and *R. Samuel Jett,* with whom was *R. Frederick Jett* on the brief, for the appellants.

*Theodore F. Brown* and *A. Earl Shipley* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Carroll County setting aside certain purported gifts of shares of stock in the Key Grain and Feed Company and in the Detour Bank made by the decedent, James Herman Allender, in his lifetime.

On August 8, 1935 the decedent, a widower with four adult children, married Fay S. Hobby, a widow with one child. They resided in his home at Westminster until his death on January 3, 1951 at the age of 74 years. Mr. Allender was Secretary-Treasurer and manager of the Key Grain and Feed Company, and owned 369 shares of its outstanding stock, out of a total of 1,017. In 1946, the decedent directed the Manchester Bank, where he had a safe deposit box, to add the names of his sons Joseph W. and Bert C. to the registry of access to the box, but it is uncontradicted that neither of his sons learned of this action until after his death, and neither of them had a key.

On December 22, 1948 the decedent wrote a purported will, but did not have it witnessed. This document provided for the sale of his home and furniture, collection of debts due, and an equal division of the proceeds between his wife and four children. It did not mention any stock holdings. The Orphans' Court denied it probate.

On January 19, 1949 the decedent caused his 369 shares of stock in the Key Grain and Feed Company to be transferred on the books of the Corporation, surrendering his certificates and having four new certificates issued as follows: 92 shares to James H. Allender and Mrs. Reginald C. Stoner, his daughter, jointly and to survivor; 92 shares to James H. Allender and Mrs. J. Philip King, his daughter, jointly and to survivor; 92 shares to James H. Allender and Bert C. Allender, his son, jointly and to survivor; 93 shares to James H. Allender and Joseph W. Allender, his son, jointly and to survivor. He placed the new certificates in his safe deposit box in the Manchester Bank. On the same day he placed in the box a new certificate for 137 shares of stock in the Detour Bank which he had previously had transferred from his name to the names of himself and his wife, Fay S. Allender "by the entireties", surrendering the old certificate.

None of the beneficiaries were informed of the transfers or knew of them until after Mr. Allender's death. The new certificates of Key Company stock were prepared by the company bookkeeper, his personal secretary, at his direction and signed by him as Secretary of the Company; they were then signed by the President, Samuel R. Weybright, at his home. The President and the bookkeeper were the only persons, except the decedent, who knew of the transfers until after his death. In March, 1949 the decedent drew a check and received from the company a $500 advance against the 1949 dividend; the balance was paid to him when it was declared in December. The 1950 dividend was likewise paid to him in December 1950. He also voted in person the whole 369 shares of stock at the stockholders' meetings in 1949 and 1950. There was testimony that he "ran the business", and "did the buying and selling", and on at least one occasion purchased real estate for the account of the corporation without prior consultation with the President or Board of Directors.

On February 24, 1951 letters of administration were granted to the widow and the two sons of the decedent.

The Key stock was appraised at about $13,000, the Detour Bank stock at $2,000. The decedent's house and lot was valued at about $26,500. On February 28, 1951 the widow filed suit to set aside the transfers; if set aside, the widow will benefit to the extent of $3,000. After the demurrers to the bill were overruled and answers filed, the case was heard in open court and a decree entered in favor of the complainant. The Chancellor hold that "the gifts fail because there was no delivery, acceptance, relinquishment of dominion or effective transfer of the shares". He found it unnecessary to pass on the question whether there was a violation of the marital right of the widow.

We think the surrender of the old certificates and the issuance of new ones was sufficient to effect a present transfer of the donor's interest. In *National Bank v. Watsontown Bank*, 105 U. S. 217, 222, 26 L. Ed. 1039 (cited in *Baltimore Retort and Fire Brick Co. v. Mali*, 65 Md. 93, 96, 3 A. 286) it was said: "The transfer, when thus consummated, destroys the relation of membership between the corporation and the old stockholder, with all its incidents, and creates an original relation with the new member, free from all antecedent obligations. * * * Nothing more remained to be done to make the conveyance of title complete and absolute, and, so far as the bank was concerned, it was irrevocable". Nor does the fact that delivery of the new certificates was made to the donor in his capacity of joint owner vitiate the transaction, since "the possession of one cotenant is in contemplation of law the possession of the other". *Young v. Cockman*, 182 Md. 246, 251, 34 A. 2d 428, 431, 149 A. L. R. 1006. The cases generally so hold. See note 153 A. L. R. 934 and cases cited. We find nothing in the Uniform Stock Transfer Act (Code, Article 23, section 55 *et seq.*) at variance with this principle. Before enactment of that Act in 1910, it had been held that a gift of shares of stock could not be effected by delivery of the certificate, endorsed or with separate assignment, without transfer on the books. *Baltimore Retort and Fire Brick Co. v. Mali, supra*. The effect

of the Act was to make the certificate negotiable, not to throw doubt upon the validity of a transfer on the books. In *Snowden v. Crown, Cork and Seal Co.*, 114 Md. 650, 657, 80 A. 510, 512, decided soon after enactment of the Statute but with reference to a transfer made years before, the court said: "Independently of the question as to the capacity of an unincorporated society to become the recipient of a gift, there can be no doubt as to the transfer by the donor in this case being absolute and irrevocable. *Albert v. Albert*, 74 Md. [526] 534, 22 A. 408, 20 Cyc. 1212, 14 Am. & Eng. Encyc. Law, (2d Ed.) 1009. Every legal requirement was observed to divest him of all title to the stock and to place it securely in the donee. *Baltimore Retort & Fire Brick Co. v. Mali*, 65 Md. 93; *Pennington v. Gittings*, 2 G. & J. 208. The assignment, surrender and cancellation of the old certificate, and the issue and delivery of the new one to the assignee, effectually accomplished the purpose of Mr. Crook to give the stock to the Baltimore Branch for the objects indicated * * *."

Nor is it material that the donees were not informed concerning the transfer. Acceptance of the gift is presumed until the contrary is shown; or, as the principle is otherwise stated, the gift is effective on transfer, subject to the right of the transferee to repudiate title and refuse to accept the gift. *Machen, Corporations* § 872; *Standing v. Bowring* (C. A.) 31 Ch. D. 282; *Roberts' Appeal*, 85 Pa. 84; *Phillips v. Plastridge*, 107 Vt. 267, 269-270, 179 A. 157, 99 A. L. R. 1074. This is the law of gifts, not peculiar to gifts of shares or securities. The same principle is applicable to deeds, *Houlton v. Houlton*, 119 Md. 180, 184, 86 A. 514, and devises and legacies. *Chilcoat v. Reid*, 154 Md. 378, 385, 140 A. 100.

The appellee contends, however, that the fact that the donor drew the dividends and voted the stock until his death, indicates an intention on his part not to make present gift but to reserve a power of dominion over the stock. The appellee relies upon the case of *Whalen*

*v. Milholland,* 89 Md. 199, 43 A. 45, 44 L. R. A. 208. The purported gift in that case was of a savings bank account, without any declaration of trust, where the donor retained the pass-book and the right of withdrawal. It was held that the gift was incomplete, primarily because the donor retained a "locus penitentiae" in the form of authority to draw the money. Cf. *Pomerantz v. Pomerantz,* 179 Md. 436, 440, 19 A. 2d 713. In the instant case the donor retained no such authority; he could not have legally rescinded the transaction or transferred the certificates without the consent of the co-owners. In the case of *In Re Bauernschmidt's Estate,* 97 Md. 35, 57, 54 A. 637, 642, it was held that the issuance of a stock certificate in the joint names of the donor and his wife did not constitute a completed gift, but in that case it was found that the wife acquiesced in the sale and transfer of the stock to a third person, and thereafter the donor exercised exclusive control over the proceeds. The court remarked: "If there had been no change made perhaps a different situation would have been presented."

In *Curley v. Wolf,* 173 Md. 393, 397, 196 A. 285, 286, mortgage participation certificates were issued in the name of the donor as life tenant with power to sell, mortgage, lease or consume, with remainders over. It was held that the gifts in remainder were valid, although the remaindermen were not informed of the transaction until after the donor's death. Chief Judge Bond, speaking for the court, said: "The complete surrender to the company of the certificates previously held, and substitution of the certificates in the two names, would constitute a complete delivery unless, despite the form of the transaction, the powers reserved may be regarded as retaining ownership in herself, and rendering the company only her agent for future gifts in remainder. And the court is of opinion that they cannot be given that construction, that the transactions made the company agent for both life tenant and remaindermen, or trustee for them, as it is usually expressed, according

to their interests." In the instant case we think the evidence of the donor's intent to transfer a present interest is clear, even though he exercised control over the dividends and voting rights during his lifetime. The completeness of the transfer could hardly be affected by a wrongful assertion of rights with which the transferor had parted. The testimony of a local custom, where stock stood in the joint names of husband and wife or parent and child, for the issuing corporation to recognize only the first named holder in regard to dividends and voting rights, cannot legalize what would be otherwise unlawful. In any event, the completeness of the transfer in remainder is not open to question.

The appellee contends, however, that if not sufficient to invalidate the transfer, the use of the dividends and the exercise of the voting rights was a fraud upon the marital rights of the wife. The principle here invoked goes beyond the question of the formal completeness of the transfer. *Mushaw v. Mushaw*, 183 Md. 511, 39 A. 2d 465. In that case transfers of joint savings bank accounts, complete in form through a declaration of trust, were set aside as in violation of the rights of a widow who was almost completely stripped of her share in the personal estate. It was pointed out in that case that earlier cases, such as *Collins v. Collins*, 98 Md. 473, 57 A. 597; *Brown v. Fidelity Trust Co.*, 126 Md. 175, 94 A. 523; *Kernan v. Carter*, 132 Md. 577, 104 A. 530; *Sturgis v. Citizens' National Bank*, 152 Md. 654, 137 A. 378; and *Bullen v. Safe Deposit & Trust Co.*, 177 Md. 271, 9 A. 2d 581, could hardly be reconciled on any principle except that of degree. So far as that is concerned, the loss of $3,000 in the instant case is smaller than in any previous case where transfers have been set aside. It must be admitted, however, that the test of degree does not commend itself as a legal criterion. If the wife receives less than her legal share in the personal estate, it would seem to be quite immaterial that she is not wholly cut off, that she receives her dower rights in the real estate, or that she has resources

of her own. On the other hand, as suggested in the *Mushaw* case, courts of equity have always inquired into the fairness, under all the circumstances, of transactions between persons in a confidential relation.

The doctrine of fraud on marital rights represents an effort to balance the social and practical undesirability of restricting the free alienation of personal property against the desire to protect the legal share of a spouse. It has always been recognized that a husband, in the absence of statutory regulation like that in the case of dower, has an unqualified right to give away his personal propery during his life time, even though the effect is to deprive the wife of her statutory share. But if the gift is not absolute and unconditional and the donor retains dominion and control over the property during his lifetime, the courts have held that the gift is colorable and may be set aside. *Hays v. Henry,* 1 Md. Ch. 337; *Sanborn v. Lang,* 41 Md. 107; *Rabbitt v. Gaither,* 67 Md. 94, 8 A. 744; *Jaworski v. Wieniewski,* 149 Md. 109, 120, 131 A. 40. The Maryland cases are carefully reviewed in an article by *Sykes, Inter vivos Transfers in Violation of the Rights of Surviving Spouses,* 10 Md. L. R. 1. See also note 157 A. L. R. 1184, supplementing earlier annotations.

In the instant case it is clear that the donor retained no legal control over the devolution of the joint interest at his death and no power to revoke or undo what he had done, a factor stressed in many of the cases. It is not necessary to decide whether the mere retention of a life estate would of itself amount to a violation of marital rights. In the instant case the donor retained nothing but a joint interest, and we think his practical, but unlawful, retention of benefits, without the knowledge or consent of the donees, does not render the transactions so colorable or illusory as to justify the setting aside of the transfers.

Without relying solely on the test of degree, we may say that we think the fact that the joint interest in the Key stock of the decedent and his children was by law

severable, though the wife got an unseverable interest by the entireties in the bank stock, was not such a reservation of dominion or title to the Key stock as amounted to a violation of the widow's rights.

*Decree reversed, with costs, and bill dismissed.*