REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 415

September Term, 2012

_____

LANA DANIELS

v.

BRENDA DANIELS

_____

Meredith,
Nazarian,
Sharer, J. Frederick
 (Retired, Specially Assigned),

JJ.

_____

Opinion by Sharer, J.

_____

Filed: June 24, 2014

It is established that, in order to effectively convey title to real property, the title documents – ordinarily a deed – must be delivered by the grantor to the grantee. An exception to the requirement of actual delivery is found in the doctrine of constructive delivery.

In the Circuit Court for Baltimore County, the court ruled that the conduct of James H. Daniels, which we shall detail, *infra*, did not satisfy the requirements of either actual or constructive delivery of a deed by Daniels to his wife, appellant, Lana Daniels. Hence, the court, after a bench trial, entered judgment for appellee, Brenda Daniels, Personal Representative of the Estate of James H. Daniels.

In her timely appeal, appellant presents the following question:

Does constructive delivery of a deed occur where the husband executes a tenants by the entireties deed, informs his wife, and places the unrecorded deed with the couple's important papers?

For the reasons set forth below, we answer this question "no" and affirm the judgment of the circuit court.

## FACTUAL and PROCEDURAL HISTORY

James H. Daniels ("Daniels") died intestate. Appellee, Brenda Daniels, his daughter from a former marriage, qualified as personal representative of his estate. In her capacity, Brenda filed a complaint in the Circuit Court for Baltimore County to quiet title, which sought to have real property at 1602 Frederick Road, Catonsville, included as an asset of the estate. The suit to quiet title asserted that paper title to the property was based on a deed,

recorded in 1987, to Daniels and his mother, Emily Daniels, as joint tenants. Upon Emily Daniels's death in 2005, Daniels became the surviving owner.

At the time of his death, Daniels was residing with appellant, Lana Daniels. Appellant asserts ownership of 1602 Frederick Road by virtue of a deed that was executed by her husband and witnessed and notarized on March 3, 2006, naming himself and appellant as tenants by the entireties. The deed was not recorded until May 12, 2011, after Daniels's death.

Daniels's execution of the deed on March 3, 2006, occurred during a meeting with his stepdaughter, Leslie Robin Cadey, an escrow closer and underwriter, and Ingrid Chichester, a notary and title officer. Chichester witnessed Daniels sign the deed and notarized his signature. Cadey testified that Daniels retained possession of the deed, despite her advice that he have it recorded. Daniels, for some reason, did not follow that advice and, as we shall discuss, placed the deed among his and appellant's personal papers in their home.

At the time the deed was executed, and thereafter for some time, appellant was in Texas receiving medical treatments. She related to the court that when she returned home, Daniels informed her that "he had added her name on the deed."

Appellant testified that on the day of her husband's death, her daughter, Cadey, was helping her locate a life insurance policy in a bedroom file cabinet that held "all of our important papers." The cabinet contained, *inter alia,* personal documents, insurance policies, and the deed to their marital residence at 2407 Hammonds Ferry Road. During the search,

2

Lana and Cadey came upon a file folder containing the executed deed to 1602 Frederick Road. Appellant had not placed the deed in the cabinet, so she concluded that her husband had done so. Upon finding the deed, Cadey asked appellant why it had not been recorded. Their assumption was that, because the property was lien free, recordation had not been necessary. Testified Lana: "[W]e assumed, because there was no lien, we didn't have to file it."

Cadey testified that she had drawn the deed at Daniels's request. She testified about her meeting with Daniels and Chichester, and the execution of the deed, and recalled her advice to Daniels to "go and record the deed in Baltimore County." Chichester confirmed that she witnessed Daniels sign the deed, and notarized his signature. She concluded that "[n]othing was unusual."

Cadey testified that on the morning of Daniels's death, while helping her mother get papers together in order to complete funeral arrangements, she discovered the executed, but unrecorded, deed in a bedroom file cabinet amongst personal papers of both Daniels and appellant. A few weeks later Cadey consulted with counsel, who advised her to "guard it with [her] life and to get it on record[,]" which Cadey did.

After recordation of the deed, Brenda Daniels, as personal representative of the Daniels estate, filed suit to quiet title, alleging that the unrecorded deed was of no effect and that the property was an asset of the estate. Appellee maintained that there had been no effective delivery of the deed, which rendered it void and inoperable.

3

The quiet title action was tried by the court on March 30, 2012. After hearing the evidence that we have recounted and arguments of counsel, the court ruled that "there has not been a delivery of the deed dated March, 2006 and recorded May 12, 2011."

The court orally explained its ruling:

[Appellant] says this was in their possessions, which means that ... she did not have exclusive dominion over these items where the deed was found. **He clearly had access to them throughout his lifetime, which means that he ... clearly could have revoked it at any point**. It would have been a much different case had this deed been found, for instance, in her safe deposit box to which she had a key.... **Recordation is not the essential element in this case. It is delivery. And had the deed been delivered either to [appellant] or to someone else as a third-party where Mr. Daniels, the decedent did not have access to it, ... this deed would survive**. But I applaud her for her honesty, her candor. She says that it was in our things, in our file cabinet, with our important documents. Not hers. Theirs. Which means that he had access to it too. He could have – if he wanted, reached in there and tore it up if he wanted or just taken it back. That being the case, delivery, being an essential element to the legality of the deed, does fail. And I must find in favor of the [appellee]. I, I am sorry because I do acknowledge that this was a forty year marriage. And it is clear in, in the Court's mind what the decedent's intention was. There's been no question in the Court's mind that he intended to transfer the interest to his, his spouse of forty years. But I am without power to change that under the law. So I must find in favor of [appellee], the Estate. I'll ask [counsel for appellee] to prepare an order to that effect.

(Emphasis added).

The court's Order, filed on April 13, 2012, provides, in relevant part:

ORDERED, that Judgment be and is hereby awarded in favor of the Plaintiff and against the Defendant; and it is further

ORDERED, that The Estate of James H. Daniels, Register of Wills for Baltimore County Estate No.: 163375, be and is hereby adjudged and decreed to be the sole, true and lawful owner of all that real property situated in

4

Baltimore County, State of Maryland, known as 1602 Frederick Road, Catonsville, Maryland 21228; and it is further

ORDERED, that the Deed, dated March 3, 2006, by and between James H. Daniels, Grantor, and James H. Daniel and Lana L. Daniels, Grantees, and recorded among the Land Records of Baltimore County ... , having been determined by this Court to be an **insufficiently delivered Deed, is hereby adjudged and decreed to be invalid and of no force and effect[.]**

(Emphasis added).

This timely appeal followed.[1]

## DISCUSSION

Appellant concedes that there was not actual delivery of the deed, but posits that Daniels's actions were effective to transfer title under the doctrine of constructive delivery. Appellant argues that "constructive delivery of a deed occurs when the husband deeds his property to himself and his wife, as tenants by the entireties, informs his wife, and places the unrecorded deed with the couple's important papers." Thus, she concludes, the trial court erred as a matter of law.

"Delivery is the last but an indispensable step by a grantor to give validity and operative effect to a deed for conveyance of real estate. Execution and acknowledgment are equally indispensable but, without delivery, accomplish nothing." *Fike v. Harshbarger,* 20 Md. App. 661, 661-62 (1974), *aff'd,* 273 Md. 586 (1975).[2] In order for the conveyance to

---

[1]Appellee did participate in this appeal.

[2] Under the common law of Maryland, "when a spouse titles property as tenants by
(continued...)

5

be held legally effective, all necessary elements of a gift must occur, including the intent to transfer the property, relinquishment of control, delivery, and acceptance by the donee. *Dorsey v. Dorsey,* 302 Md. 312, 318 (1985).

In *Fike,* which involved a conveyance of real estate from father to daughter, and a deed that was not recorded until after the father died, the sole issue was "whether or not there was a proper and legal delivery of the deed from [father] to [daughter]." 273 Md. at 589. The Court of Appeals affirmed the decisions of both this Court and the Circuit Court for Garrett County that, because the grantor's daughter lacked "any evidence whatsoever to indicate that Mr. Thomas surrendered control over same during his lifetime, it was not a valid delivery of the deed under the laws of the State of Maryland." *Fike,* 273 Md. at 589. The Court wrote:

> One hundred years ago our predecessors, through Judge Robinson, stated in *Duer v. James,* 42 Md. 492 (1875), citing the opinion of the Supreme Court of the United States in *Younge v. Guilbeau,* 70 U.S. (3 Wall.) 636, 18 L. Ed. 262 (1866), that to constitute delivery of a deed the grantor must do some act putting it beyond his power to revoke, that there can be no valid delivery so long as the deed is within his control and subject to his authority, although delivery need not be to the grantee, but may be to a third party authorized to receive it, or even to a stranger for the use of the grantee.

*Id.*

---

[2](...continued)
the entirety, a presumption of gift to the other spouse arises[.]" *Dorsey v. Dorsey,* 302 Md. 312, 317 (1985).

The concept that effective delivery is essential to the validity of a conveyance has been long recognized by Maryland courts. *See Clarke v. Ray,* 1 Har. & J. 318 (1802) (Delivery is essential to the validity of a deed); *accord, Hearn v. Purnell,* 110 Md. 458, 465 (1909) (Delivery is essential to the validity of a deed); *Rogers v. Rogers,* 271 Md. 603, 607 (1974) (Delivery requires transferring the donor's dominion over the property without power of revocation or retention of dominion over the subject of the gift).

In the case *sub judice*, the trial court found that, based on direct evidence, Daniels intended to make a gift of the property. The court further found, inferentially, that the donee – appellant – had accepted the gift. The record supports these evidentiary findings. Conversely, the trial court found that the essential elements of delivery and relinquishment of control were not proven. The record also supports that conclusion. Delivery requires that the grantor be divested of all dominion and control over the deed. *Fike,* 20 Md. App. at 665. "The burden is on the donee to establish every element of a gift." *Dorsey,* 302 Md. at 318.

Under Maryland law, delivery is consummated only when the instrument has passed from the grantor, without any right of recall, to the grantee or to a third party for the use of the grantee. Delivery without right of recall is essential to the conveyance of a deed. *Gianakos v. Magiros,* 234 Md. 14 (1964). "It is recognized that there has been a consummated delivery when the instrument has passed from the grantor, without right of recall, to the grantee or to some person for his use." *Id.* at 27.

> The test of delivery is the relinquishment by the grantor of the custody or control of the deed. When he has formally executed and acknowledged it

and has delivered it unconditionally to the grantee, or one acting for him, the conveyance is completed and the title has passed.

*Krach v. Carson,* 150 Md. 659, 662 (1926).

The Court of Appeals has been consistent in ruling that actual delivery will be found only when there has been a formal execution and delivery of the deed, without right of recall. *Id.* To constitute a delivery of a deed, the grantor must take some action which puts it beyond his power to revoke. There can be no delivery so long as the deed is within the grantor's control and subject to his authority. *Duer v. James,* 42 Md. 492, 496 (1875); *Renehan v. McAvoy,* 116 Md. 356, 359 (1911) (Delivery, essential to the validity of every deed, requires unconditional relinquishment by the grantor of the custody or control of the instrument); *Buchwald v. Buchwald,* 175 Md. 115, 120 (1938) (Where there was no effective delivery of the deed, it was invalid).

Delivery may be to a third party, for the benefit of a grantee, as long as the grantor relinquishes all control over the deed. *See, e.g., Houlton v. Houlton,* 119 Md. 180, 184 (1913) (Where deed delivered to third party for the grantee, who accepted it, conveyance held complete); *Clark v. Creswell,* 112 Md. 339, 342 (1910) (After grantor executed, acknowledged and delivered deed to third party, the conveyance is complete and title has passed even though grantee unaware of delivery). The ultimate test of a valid delivery is the grantor's relinquishment of all custody and control over the deed, which would give the grantor any power to revoke or to "take the deed back and destroy it[.]" *Meise v. Tayman,* 222 Md. 426, 431 (1960).

8

The record before us reveals that Daniels retained access and control over the deed by placing it in a file folder containing both his and appellant's personal documents – a file to which each had equal access. Had he, for example, given the deed to appellant, with instructions for future recordation, or had he placed it in her personal papers to which he had no access, the court could have correctly found effective delivery. If Daniels, after executing the deed, had given it to either Cadey or Chichester, with instructions as to recordation, the court might well have found effective delivery. "There is a consummated delivery when the instrument has passed from the grantor, without right of recall, to the grantee or some third person for [the grantee's] use." *Krach,* 150 Md. at 662.

Appellant advances the argument that Daniels's act of placing the deed into the couple's common file, and telling her that he had placed her name on the deed, constituted constructive delivery. In support of her position, she relies on two cases involving the conveyance of stock certificates, *Young v. Cockman,* 182 Md. 246 (1943), and *Allender v. Allender*, 199 Md. 541 (1952), both of which, in our view, are distinguishable.

Allender, a widower and father of four adult children, married a widow who had one child. 199 Md. at 544. Prior to his death, Allender transferred 369 shares of stock on the books of a local company to his four children, and placed the newly issued stock certificates in a safe deposit box, together with a new certificate for 137 shares in the names of himself and his wife, Faye Allender, as tenants by the entireties. None of the donees was aware of the transfers until after Allender's death, intestate. *Id.* at 545.

9

His widow filed suit to set aside the transfers to his children. The Chancellor ruled that the gifts failed "because there was no delivery, acceptance, relinquishment of dominion or effective transfer of the shares." *Id.* at 546. The Court of Appeals reversed, holding that delivery was complete because "[n]othing more remained to be done to make the conveyance of title complete and absolute, and, so far as the bank was concerned, it was irrevocable." *Id.* "Every legal requirement was observed to divest him of all title to the stock and to place it securely in the donee." *Id.* at 547. Unlike the case before us, Allender retained no authority or power to legally rescind the transaction or otherwise transfer the certificates "without the consent of the co-owners." *Id.* at 548. The Court emphasized the importance of the fact that "the donor retained no legal control over the devolution of the joint interest at his death and no power to revoke or undo what he had done[.]" *Id.* at 550.

In *Young v. Cockman,* Cockman's widow brought suit against his daughter to produce a stock certificate which transferred stock in McCormick & Co. 182 Md. at 248. After the Cockmans became estranged, she agreed to resume marital relations and care for him in exchange for 60 shares of stock, which were owned jointly by Cockman and Young, his daughter by a previous marriage. Cockman and daughter Young completed the assignment on the certificate, indicating a transfer of the shares to Cockman and wife. However, Cockman did not register the shares with the corporation, and retained possession of the certificate. *Id.* Addressing the question of whether there had been a valid transfer of title to

10

the stock, the Court held that there was a valid delivery, based upon an application of contract law. *Id.* at 250.

> Delivery may be constructive, rather than actual, provided that it is accompanied by words showing a donative intent. But, of course, either constructive or actual delivery must completely divest the donor of his property and completely invest the donee with it.

*Id.*

Considering their mutual agreement that Mrs. Cockman would care for her estranged husband in exchange for the shares of stock, an agreement to which his daughter, Young, was a party, the Court was compelled by equitable principles to order the corporation to transfer the 60 shares of stock on its books to Mrs. Cockman. *Id.* at 252. The fulfilment of her promise to care for Cockman until his death represented a valuable consideration. *Id.* The Court held "that a contract between husband and wife, made when they are separated for just cause, whereby the husband agrees to pay his wife a specified sum if she will resume marital relations, rests upon a valuable consideration and is enforceable." *Id.* at 253.

Unlike *Young,* the intended transfer of property from Daniels to himself and his wife was a gift, not a matter of contract. And, unlike *Allender,* Daniels retained dominion and control over the file cabinet where the unrecorded deed remained throughout his lifetime; thus, he had not completely relinquished control over the deed.

11

We find no error in the circuit court's findings and rulings that appellant did not satisfy her burden of proving constructive delivery, and shall affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED;**

**COSTS ASSESSED TO APPELLANT**.